Betty F. Sessions, as proponent of the last will and testament of Birdie Pugh, appeals from a jury verdict against her and in favor of Florence B. Handley, the daughter of Mrs. Pugh.
The facts giving rise to the will contest are as follows:
Betty and L.D. Sessions had been neighbors of Birdie Pugh for approximately 25 years. Sometime in 1981, Mrs. Pugh contacted the Sessionses in regard to selling her home and property to them, reserving a life estate for herself. The Sessionses contacted their bank and had the property appraised. The appraisal indicated that the property had a fair market value of $10,500.00, but the appraiser reduced the amount to $6,500.00 because of the reservation of the life estate.
On August 4, 1981, Betty Sessions took Mrs. Pugh to see an attorney, Mr. Howard Haygood, in regard to preparing the deed for sale of the property. While at the attorney's office, Mrs. Pugh executed a last will and testament leaving $2,000.00 to the Awin Church of Christ, and leaving the residue and remainder of both her real and personal property to her sister-in-law, Katie Lou Markis.
According to the testimony of Betty Sessions, Mrs. Pugh had told her that her sister-in-law, Mrs. Markis, had become angry when she found out that Mrs. Pugh *Page 1166 
had conveyed her real estate to the Sessionses for $6,500.00. Apparently, Mrs. Pugh had offered the same property to her nephew Gilbert Pugh for $27,000.00 just two months prior to selling the property to the Sessionses.
Although Mrs. Markis did not testify, the testimony at trial indicates that prior to 1981 Mrs. Markis had helped Mrs. Pugh with her errands and had carried her to the doctor and to church each week. Sometime thereafter, in the spring of 1981, Mrs. Sessions began taking Mrs. Pugh to church, to Greenville to cash her check, to buy groceries, and to the doctor. She testified that she would do these errands whenever Mrs. Pugh would call on her. The testimony also indicates that other neighbors and friends would also carry Mrs. Pugh to do her errands.
The evidence also indicates that sometime around September 1981, Mrs. Pugh wrote her bank, asking that Betty Sessions be allowed to sign her checks if she should ever become disabled. The signature cards signed by Betty Sessions indicated that a joint account was set up whereby Betty Sessions was given authority to sign checks should Birdie Pugh be unable to do so. There was no evidence that Betty Sessions ever signed a check for Mrs. Pugh or that any money was ever taken out of the account by Mrs. Sessions.
On September 10, 1981, Mrs. Pugh returned to Attorney Hagood's office and informed him that she wanted to change the will that she had made in August. After some discussion, she told him that she no longer wanted to leave her estate to the church and Mrs. Markis. She asked to make a new will that would bequeath a cedar chest and her clothing to her daughter, Florence Handley, and the residue to Betty F. Sessions.
Mrs. Birdie Pugh died of cancer on November 19, 1982. The purported last will and testament dated September 10, 1982, was offered for probate. Thereafter, Florence B. Handley, as daughter of Birdie Pugh, contested the probate of the will. In her contesting complaint, Florence Handley alleged that Birdie Pugh did not possess testamentary capacity to make a will and that the purported will was procured through undue influence upon Birdie Pugh by Betty F. Sessions and/or L.D. Sessions.
After a jury verdict in favor of the contestant, Betty Sessions appealed, claiming, inter alia, that her motion for directed verdict should have been granted by the trial court and that the evidence before the jury was not sufficient to support the verdict.
 I. Undue Influence
In Pruitt v. Pruitt, 343 So.2d 495 (Ala. 1977), this Court set forth the requisite elements for a will challenge based upon undue influence:
 "Our cases have consistently held that when undue influence is asserted in a will contest, the contestant has the burden, in order to raise a presumption of undue influence, to prove a dominant
confidential relationship and undue activity in the execution of the will by or for a favored beneficiary. In other words, evidence must establish: (1) a confidential relationship between a favored beneficiary and testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) undue activity on the part of the dominant party in procuring the execution of the will."
Id., 343 So.2d at 499 (citations omitted). See also Penn v.Jarrett, 447 So.2d 723, 724 (Ala. 1984), and cases cited therein.
In this case, we find that evidence of the first two elements was presented at trial; a confidential relationship and a dominant or controling influence by the favored beneficiary, Betty Sessions.
The determinative question then, is whether there was undue activity on the part of Betty Sessions in procuring the execution of the will. Proof of undue activity is essential to prove that the free agency of a testator was destroyed and the wishes of another substituted therefor. Rabon v. Rabon,360 So.2d 971 (Ala. 1978). In general, undue activity in the *Page 1167 
procurement or execution of the will may be proved by circumstantial evidence. Moreover, all that is needed to submit the case to a jury is a mere scintilla of evidence from which a jury can reasonably infer undue activity on the part of the favored beneficiary. Reed v. Shipp, 293 Ala. 632, 636,308 So.2d 705, 708 (1975). However, the scintilla standard is not satisfied by mere suspicion or speculation. In this case, Florence Handley failed to present even a scintilla of evidence that Birdie Pugh did not execute the September 10, 1981, will of her own volition. There was not even a mere spark of evidence that Betty Sessions had anything to do with the procurement of the September 10, 1981, will.
While Florence Handley makes much of the fact that Betty Sessions was the one who brought Birdie Pugh to the attorney's office on August 4, 1981, there was no evidence that Betty Sessions was present when the September 10, 1981, will was executed or that she even discussed this will with the testatrix until after its execution. Additionally, the fact that Betty Sessions helped Birdie Pugh by carrying her on errands and to appointments and the fact that Birdie Pugh made her checking account a joint one between her and Sessions, does not give rise to an inference that there was any undue activity in procuring the September 10, 1981, will. "There must be evidence, in addition to the fact of relationship, of active interference in procuring the execution of the will." Arringtonv. Working Woman's Home, 368 So.2d 851 (Ala. 1979).
We therefore find that the issue of undue activity was improperly submitted to the jury.
 II. Testamentary Capacity
The law presumes that every person has the capacity to make a will; therefore, the contestant has the burden to prove lack of testamentary capacity. Fletcher v. DeLoach, 360 So.2d 316, 318
(Ala. 1978). In a will contest, whether a directed verdict should have been granted depends upon whether the contestant produced at least a scintilla of evidence in support of his or her claim. Koonce v. Mims, 402 So.2d 942 (Ala. 1981).
In Fletcher v. DeLoach, supra, 360 So.2d at 318, this Court reaffirmed the proposition that in order to execute a valid will, the testatrix must have "testamentary capacity," which we defined as follows:
 "`[M]ind and memory sufficient to recall and remember the property she was about to bequeath, and the objects of her bounty, and the disposition which she wished to make — to know and understand the nature and consequences of the business to be performed, and to discern the simple and obvious relation of its elements to each other. . . .' Knox v. Knox, 95 Ala. 495, 503, 11 So. 125, 128 (1892)."
In the instant case, we cannot find even a scintilla of evidence to indicate that Birdie Pugh lacked testamentary capacity when she executed the will on September 10, 1981. On the contrary, the evidence from Attorney Hagood and his secretary, Virginia Russell, indicated that Birdie Pugh was alert and of sound mind when she made the will on September 10, 1981.
The only testimony indicating that Mrs. Pugh did not possess testamentary capacity came from the contestant, Florence Handley. She testified that during 1980 and 1981, when she was able, she would visit her mother at least every two weeks, that during that period of time her mother became increasingly feeble and unable to handle her affairs, and that she did not know half the time what she was doing. Florence Handley also testified that her mother was afraid that if the Sessionses got mad at her they would place her in a nursing home. This evidence, however, is insufficient to show that Birdie Pugh lacked testamentary capacity on September 10, 1981, the date the will was executed. As we must reiterate, "the scintilla rule is not satisfied by speculation." Arrington v. WorkingWoman's Home, 368 So.2d 851, 854 (Ala. 1979). *Page 1168 
Contestant also argues that there were other suggestions from the testimony that Mrs. Birdie Pugh lacked testamentary capacity at the time she executed her will, such as the unreasonableness of distributions made by her in her will. While we agree that an unequal disposition of property may, in some cases, reflect upon a testatrix's capacity to recall the natural object of her bounty, an unequal disposition of property, per se, raises no presumption of testamentary incapacity, nor is it per se unnatural. Fletcher v. DeLoach, supra, 360 So.2d at 318. In this case, the evidence showed that Florence Handley was not included at all in the August will nor in any prior will. The testimony also indicated that Birdie Pugh spoke at length to Attorney Hagood regarding the state of her family relations and her intentions regarding the testamentary disposition to her daughter, Florence.
We are not pursuaded by the contestant's argument that the fact that Birdie Pugh conveyed to the Sessionses the same real property that the earlier will would have bequeathed to Katie Lou Markis indicates that she was unaware of the natural objects of her bounty. At the time of making the August 4, 1981, will, Mrs. Pugh also made a deed which conveyed her home and property. This conveyance, however, does not show that she was unaware of the natural objects of her bounty, nor does it necessarily indicate that she intended to bequeath the same property that she was conveying. The provision in the August 1981 will was a residuary clause, which left all remaining
property to Katie Lou Markis. This is a standard provision included in most wills that allows for both real and personal property, present and later acquired, to be left to a desired beneficiary. Additionally, even if we were to accept the contestant's argument, this evidence would not be indicative of Birdie Pugh's mental condition at the time the September will was executed. Accordingly, there was not even a scintilla of evidence to indicate that Birdie Pugh lacked testamentary capacity on the date the will was executed.
Therefore, a verdict should have been directed in favor of Betty Sessions on both the issue of undue influence and the issue of lack of testamentary capacity.
REVERSED AND REMANDED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur.