Annie Jean Helms and several other persons (the "contestants") contested the validity of a will offered for probate as the will of Bernice Grimes; they filed their contest in the Coffee Probate Court. Pamela Morrow and Ruth H. Morrow (the "proponents") maintained that the will was valid. The case was transferred from the Coffee Probate Court to the Coffee Circuit Court. The will contest proceeded to a jury trial. The jury returned a verdict for the contestants. The proponents moved for a judgment as a matter of law ("JML") at the close of the contestants' evidence and at the close of all the evidence, and the proponents renewed their motion after the jury had returned its verdict. The trial court denied both motions and entered a judgment for the contestants. The proponents appealed to the supreme court, which transferred the case to this court, pursuant to § 12-2-7(6), Ala. Code 1975. *Page 1134 
The motion formerly known as a motion for a directed verdict is now known as a motion for a judgment as a matter of law (JML). See Rule 50, Ala.R.Civ.P. Our supreme court has stated the standard of review applicable to a ruling on a JML motion:
 "When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in granting or denying the motion. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala. 1997). Regarding questions of fact, the ultimate issue is whether the nonmovant has presented sufficient evidence to allow the case or issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala. 1992). In an action filed after June 11, 1987, the nonmovant must present substantial evidence to withstand a motion for a JML. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in a light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id. If the question is one of law, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas Co., 599 So.2d 1126 (Ala. 1992)."
Ex parte Alfa Mut. Fire Ins. Co., 742 So.2d 1237, 1240 (Ala. 1999).
The proponents argue that the trial court erred by submitting the following issues to the jury: (1) whether the will was invalid because of an improper execution; (2) whether the will was invalid on the basis of incapacity; and (3) whether the will was invalid on the basis of an exercise of undue influence by the proponents over the decedent.
The proponents argue that the trial court erred by allowing the jury to consider whether the will was properly executed. They argue that the will was self-proved, pursuant to § 43-8-132, Ala. Code 1975, which states:
 "(a) Any will may be simultaneously executed, attested, and made self-proved, by acknowledgment thereof by the testator and affidavits of the witnesses, each made before an officer authorized to administer oaths under the laws of the state where execution occurs and evidenced by the officer's certificate, under official seal, in substantially the following form:
". . . .
 "(b) An attested will may at any time subsequent to its execution be made self-proved by the acknowledgment thereof by the testator and the affidavits of the witnesses, each made before an officer authorized to administer oaths under the laws of the state where the acknowledgment occurs and evidenced by the officer's certificate, under the official seal, attached or annexed to the will in substantially the following form:
". . . .
 "(c) If the will is self-proved, as provided in this section, compliance with signature requirements for execution is conclusively presumed, other requirements of execution are presumed subject to rebuttal without the testimony of any witness, and the will shall be probated without further proof, unless there is proof of fraud or forgery affecting the acknowledgment or affidavit." *Page 1135 
It is undisputed that the will and the acknowledgment complied with all the requirements of § 43-8-132, except that the documents contain no notary seal. The proponents argue that the absence of the notary seal does not destroy the self-proved status of the will. The contestants argue that the absence of the notary seal precludes the will from being self-proved. This court has held that the absence of a notary seal on an affidavit presented as evidence in support of a motion for summary judgment did not affect the admissibility of the affidavit. McCloud v.State, 715 So.2d 230 (Ala.Civ.App. 1998). The court stated its reasoning as follows:
 "There is no Alabama statute requiring an Alabama notary public to take an affidavit under seal. Our supreme court has held that the name of the notary public must be disclosed in the body of the recitals of the affidavit or by his or her signature. Ex parte Finance America Corp., 507 So.2d 458 (Ala. 1987); Sellers v. State, 162 Ala. 35, 50 So. 340 (1909). [The] affidavit contains the signature of the attesting notary public."
715 So.2d at 232. See also Harrison v. Simons, 55 Ala. 510 (1876) (holding that a notarial seal is not necessary to authenticate the certificate of acknowledgment of an Alabama notary).
The holding of McCloud is directly applicable to this case. Section43-8-132(b) provides that the will becomes self-proved by execution of an acknowledgment of the testator and affidavits of the witnesses, which are certified by a notary. Both McCloud and this case involve notarization of affidavits, and, based on the holding of McCloud, we conclude that the notary seal is not required to validate the acknowledgment and affidavits in the decedent's will. Furthermore, the notary in this case, who is also the attorney who drafted the will, signed the document and testified that he witnessed the signing of the will by the decedent and the witnesses. In this case, the contestants presented no other evidence indicating that the will was improperly executed or that the affidavits were forged or fraudulent. Therefore, the trial court erred by not admitting the will as self-proved and erred by submitting to the jury the issue whether the will was properly executed.
The proponents next argue that the trial court erred by submitting to the jury the issue whether the decedent lacked the requisite mental capacity to execute the will. Testamentary capacity requires
 "mind and memory sufficient to recall and remember the property [the decedent is] about to bequeath, and the objects of her bounty, and the disposition which she [wishes] to make — to know and understand the nature and consequences of the business to be performed, and to discern the simple and obvious relation of its elements to each other."
Bolan v. Bolan, 611 So.2d 1051, 1057 (Ala. 1993).
The decedent and her husband, who had predeceased her, accumulated a sizable estate during their marriage. They operated a successful business for many years. They had no children. In 1994, the decedent executed a will that would have divided her estate among her sister and her niece — the proponents — and several of her husband's relatives, who are the contestants. The 1994 will favored the proponents. Her husband died of cancer in 1996. In December 1996, the decedent was diagnosed with the same form of cancer that her husband had had. In January 1997, the decedent executed a will that practically disinherited all of the contestants and left almost all her estate to the proponents. The decedent died in 1998. The contestants are challenging the probate of the 1997 will. *Page 1136 
The evidence most favorable to the contestants indicates that the decedent had been extremely upset about her cancer diagnosis. Her physician prescribed a pain reliever. The proponents presented no evidence indicating that the pain medication had made the decedent mentally incompetent at the time she executed the will. The attorney who drafted the will testified that the decedent was competent at the time she executed her will. The evidence in the record suggests that the decedent may have executed the 1997 will rashly and quickly; however, the fact that a person takes rash actions while in a state of mental upset is not at all proof of a lack of capacity. Therefore, we conclude that the trial court erred by submitting to the jury the issue of the decedent's capacity.
Last, the proponents argue that the trial court erred by submitting to the jury the issue whether they had exercised undue influence over the decedent.
 "A presumption of undue influence arises when: (1) there is a confidential relationship between a favored beneficiary and the [decedent]; (2) there is a dominant and controlling influence by the beneficiary over the [decedent]; and (3) there is undue activity in procuring the execution of the will. Ex parte Baker, 709 So.2d 7, 9 (Ala. 1997); Allen v. Sconyers, 669 So.2d 113, 117 (Ala. 1995). In order to prevail on a claim of undue influence, a party must establish each of these elements. Sessions v. Handley, 470 So.2d 1164, 1166 (Ala. 1985)."
Burns v. Marshall, 767 So.2d 347, 352 (Ala. 2000).
We conclude that the trial court also erred by submitting to the jury the issue of undue influence. The proponents are the sister and niece of the decedent, and they cared for the decedent during her terminal illness. However, the record contains no evidence indicating that the proponents dominated or controlled the decedent. The decedent managed her own financial affairs and had helped her husband in running a business. The proponents also testified that they had had no knowledge that the decedent had executed the 1997 will, and certainly had not influenced her to make that will. They testified that they knew she had executed a will prior to 1997 but that they did not know the disposition she had made by that will. Simply put, the record contains no evidence of undue influence.
Because the circuit court erred by submitting any of the three issues to the jury, its judgment is reversed and the cause is remanded for that court to enter a judgment for the proponents.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, J., concurs.
YATES, P.J., concurs specially.
THOMPSON and MURDOCK, JJ., concur in the result.