STUART, Chief Justice.
Following the death of Sara Dees in February 2013, her nephew Franklin Leroy Stephens produced a will executed by Dees in September 2012 in which she bequeathed to him the vast majority of her estate. Dees's sister Hazel Colley ("Hazel"), who had been a named beneficiary in a previous will executed by Dees, initiated an action challenging the validity of the September 2012 will. Hazel passed away while the will contest was pending, and the executor of her estate, her son Stephen Colley ("Colley"), was ultimately substituted as plaintiff. Following a jury trial, a verdict was returned in favor of Stephens and Dees's estate, and the Pike Circuit *710 Court accordingly entered a judgment in their favor. Colley appeals; we affirm.
I.
A more detailed recitation of the facts at the heart of this case can be found in Stephens v. Colley, 160 So.3d 278 (Ala. 2014) (" Stephens I"), in which this Court reversed a preliminary injunction that had been issued by the trial court. The facts essential to this appeal may be summarized as follows. In January 2012, Dees was residing in a rehabilitation center in Troy following the amputation of her second leg when Stephens checked her out and returned her to her house, moving in with her to help with her care. Over the course of the next year, Stephens arranged appointments for Dees with an attorney, who drafted a durable power of attorney designating Stephens as Dees's attorney-in-fact and the September 2012 will designating Stephens as the executor of Dees's estate and making him her primary heir. Stephens also drove Dees to various financial institutions in the area at which Dees maintained accounts and took steps to be added as either a signatory or beneficiary to those accounts.
In February 2013, Dees passed away. Stephens thereafter submitted her September 2012 will to the Pike Probate Court and was named executor of her estate. On March 12, 2013, Hazel initiated the underlying action by petitioning the trial court and asking it to take over the administration of Dees's estate; Hazel also simultaneously asked the trial court to remove Stephens as executor based on his 1990 conviction for manslaughter, which, she alleged, rendered him unfit pursuant to § 43-2-22(a), Ala. Code 1975, which bars any individual "convicted of an infamous crime" from serving as an executor. The trial court thereafter granted both of Hazel's requests, and Stephens's daughter Sonya Bolling was appointed the new executrix of Dees's estate. In August 2013, Hazel amended her initial pleading, asserting claims against Stephens and Dees's estate and asking the trial court to set aside both the September 2012 will and actions taken pursuant to the power of attorney because, she alleged, they had been procured by fraud, misrepresentation, and undue influence. In October 2013, Hazel initiated a new action asserting additional undue-influence and breach-of-fiduciary-duty claims against Stephens; upon Hazel's request, this new action was consolidated with the existing action. None of Hazel's pleadings through this time requested a trial by jury on her claims.
In February 2014, Hazel moved the trial court to enter a temporary restraining order barring Stephens from spending any more money from Dees's accounts or taking any action affecting the title to Dees's house. Hazel also requested that Stephens be required to identify where all assets formerly held by Dees were located and that certain funds that had previously been identified be paid into the trial court for holding. The trial court thereafter issued the requested temporary restraining order and, following a subsequent hearing, issued a preliminary injunction extending the terms of the restraining order until the litigation was resolved. Stephens appealed to this Court, and, in Stephens I, we reversed the trial court's order entering the preliminary injunction because it failed to comply with Rule 65(d)(2), Ala. R. Civ. P. 160 So.3d at 284.
While Stephens I was pending, Hazel passed away. On remand, Colley was substituted as the plaintiff, and the trial court issued another preliminary injunction, the terms of which were similar to the preliminary injunction reversed on appeal but with additional explanation so as to comply with Rule 65(d)(2). Stephens appealed that *711 preliminary injunction also; however, in March 2015, this Court affirmed the trial court's preliminary injunction without an opinion. See Stephens v. Colley, 210 So.3d 1091 (Ala. 2015) (table) (" Stephens II").
While Stephens II was pending, Colley moved the trial court to sever the claims against Dees's estate, which had not appealed either of the preliminary injunctions entered, so that those claims could proceed to trial. In October 2014, the trial court separated the claims. Thereafter, Colley moved the trial court to remove Bolling as the executrix of Dees's estate. That motion was vigorously opposed by Dees's estate, and the trial judge ultimately recused himself from the case before Colley withdrew his request to remove Bolling so that, he stated, the litigation could move toward a resolution.
After a new trial judge was appointed, a hearing was held in October 2015 at which the trial court ordered the parties to mediation and stated that, if mediation was unsuccessful, a bench trial would be scheduled. In November 2015, Colley moved for the first time for a trial by jury, arguing that the previous trial judge had indicated that he would use an advisory jury and that no party would accordingly be prejudiced if a jury heard the case. Stephens and Dees's estate responded by arguing that any right to a jury trial had been waived because it had not previously been asserted. The parties were thereafter unable to agree to dates and details for any mediation proceedings, and, in March 2016, Colley moved the trial judge to recuse himself, citing the trial court's management of the jury-trial and mediation issues, as well as its indication that it would attempt to narrow the scope of the issues at trial and its apparent "personal relationship" with defense counsel. In July 2016, the trial judge denied the motion to recuse in a written order addressing each of the concerns raised by Colley; however, the trial court also subsequently agreed to receive additional briefs on the jury-trial issue. In February 2017, the trial court entered an order granting Colley's request for a jury trial, stating:
"The court finds that pursuant to Rule 38(d), Ala. R. Civ. P., there has been a waiver of right to trial by jury. [However,] Rule 39(b), Ala. R. Civ. P., allows discretion in allowing an untimely jury demand. A trial court should exercise its discretion liberally in favor of granting a jury trial in absence of strong and compelling reasons to the contrary. A right to a trial by jury is fundamental and courts should indulge every reasonable presumption against waiver. Aetna Ins. Co. v. Kennedy ex rel. Bogash, 301 U.S. 389 (1937).
"Since the undersigned judge never set this matter for a bench trial after reassignment and since there would be no significant prejudice to the defendants should the court grant the jury demand, it is ordered that the plaintiff's request for a jury demand is granted. The clerk shall transfer this case to the jury docket. As previous[ly] ordered, the court will first address 'only' the will contest in a bifurcated trial.[1 ] A will contest is limited to the issue of whether the writing in question is a valid will of the decedent. Ray v. Huett, 225 So.3d 30 (Ala. 2016)."
*712 (Emphasis in original.) On March 3, 2017, the case was set for the jury term beginning June 7, 2017.
On June 2, 2017, Stephens and Dees's estate filed a motion in limine asking the trial court to bar Colley from discussing at trial Stephens's 1990 manslaughter conviction or the fact that that conviction had served as the basis for his removal as the executor of Dees's estate; the trial court granted the motion, holding that the prejudicial effect of such evidence would substantially outweigh any probative value. On June 12, 2017, the case finally proceeded to trial. Before opening statements, Colley requested that he also be allowed to try his fraud and undue-influence claims relating to the power of attorney and Dees's financial accounts; however, the trial court denied the request, subsequently issuing a written order in which it stated that "[t]his court has made it abundantly clear from assignment that the court would try only the will contest first and that all pending counts of both complaints would remain pending for another trial."
Following the completion of Colley's case-in-chief, Stephens and Dees's estate moved the trial court to enter a judgment as a matter of law in their favor on all counts. The trial court granted that motion in part, holding that, although "there is a prima facie case that's been presented with regards to undue influence and mental capacity ..., I've not heard any evidence of [fraud that would make the will invalid]." Accordingly, the trial court entered a judgment as a matter of law in favor of Stephens and Dees's estate on the claim that Dees's September 2012 will was the product of fraud. Stephens and Dees's estate thereafter presented their defense, and, after they rested their case, the trial court denied the parties' respective motions seeking judgments as a matter of law and submitted the case to the jury. Shortly after the jury began its deliberations, it asked the trial court for legal pads and for a written copy of the jury instructions it had been given. After supplying the legal pads and discussing the other request with counsel for the parties, the trial court informed the jury that it could not give it any written instructions to take into deliberations, but further explained that "the actual instructions I've given you are the guidelines or the law you are to apply to this case. But it does involve the issue of whether or not it's a valid will, whether or not Ms. Dees had mental capacity, and whether or not there was undue influence by Leroy Stephens."
The next day, the jury sent the trial court another note stating that it could not agree on a verdict; the trial court released the jury for lunch and instructed it to continue deliberations when it returned. After lunch and further deliberations, the jury did reach a verdict-in favor of Stephens and Dees's estate-and, on June 15, 2017, the trial court entered a judgment consistent with that verdict, further certifying that judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. After his postjudgment motions were denied, Colley filed a notice of appeal to this Court.
II.
Colley argues that the judgment entered against him and in favor of Stephens and Dees's estate should be reversed for six reasons. First, he argues that the trial court erred by not entering a judgment as a matter of law in his favor at the close of all the evidence. This Court has stated:
"When reviewing a ruling on a motion for a [judgment as a matter of law], this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a [judgment as a matter of law].
*713 Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala. 1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala. 1992). The nonmovant must have presented substantial evidence in order to withstand a motion for a [judgment as a matter of law]. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a [judgment as a matter of law], this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id."
Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1152 (Ala. 2003). Colley specifically argues that he was entitled to a judgment as a matter of law because, he says, after he presented his case-in-chief, the trial court specifically held that he had established a prima facie case both that Dees lacked the mental capacity to execute the September 2012 will and that she executed it only because of the undue influence Stephens executed over her, and, Colley further alleges, Stephens and Dees's estate thereafter failed to present any medical evidence that would rebut his evidence indicating that Dees lacked the mental capacity to execute a will in September 2012. This argument is misguided.
Colley contends in his brief that the trial court's ruling that he had established a prima facie case left "no genuine issue of fact remaining to be resolved at the end of [his] case." Colley's brief at p. 20. In fact, however, the trial court's ruling meant exactly the opposite-that he had produced substantial evidence creating a factual dispute. Carter v. Henderson, 598 So.2d 1350, 1353 (Ala. 1992). Therefore, Colley was entitled to have his claims submitted to the jury, but the jury was entitled to decide those claims as it saw fit. Colley claims that Stephens and Dees's estate failed to refute the evidence he submitted of Dees's mental incompetency when they presented their case-a claim Stephens and Dees's estate refute; however, this argument overlooks the fact that evidence was also presented during the presentation of Colley's case from which a jury might have concluded that Dees was competent when she executed the September 2012 will. For example, Colley himself testified that, although he visited Dees three times while Stephens was living with her, he was never aware that she was incompetent and she, in fact, "seemed to be okay." Moreover, although the medical records introduced by Colley contained evidence of Dees's diminished mental capacity, they also contained some evidence indicating that Dees was not permanently incompetent. Notably, a March 21, 2012, medical record contained the following entry:
"Ms. Dees is noted with orientation to all spheres. She voices her needs. And Ms. Dees was able to provide accurate responses during her cognitive assessment. She did not require any cueing interventions during her cognitive assessment. Ms. Dees is cognitively able to make choices that are relative to her plan of care."
The jury might have chosen to give greater weight to this evidence when deliberating, or it might also have entirely disbelieved the conflicting evidence; regardless of its reasoning, the jury, as the ultimate fact-finder, was entitled to decide factual *714 issues as it saw fit. See Haynes v. State, 644 So.2d 1281, 1282-83 (Ala. Crim. App. 1994) ("[T]he fact that the state failed to present a rebuttal witness does not require us to overturn the jury's verdict. The jury, in weighing the credibility of the evidence, has the right to disbelieve all of the evidence or to disbelieve any part of it.").
We further note that, to the extent Colley is arguing that Stephens and Dees's estate were required to refute, with medical evidence, the evidence he put forth of Dees's incompetency, he is incorrect. In Sanders v. Brooks, 611 So.2d 336 (Ala. 1992), this Court considered a case in which a doctor diagnosed the testatrix with dementia approximately two months before she executed a will, but various other lay witnesses who had had interactions with her subsequent to that diagnosis testified that she appeared to be of sound mind. The Sanders Court concluded that the testimony of the lay witnesses could be given more weight than the doctor, explaining:
"Evidence showing that a testatrix had become increasingly feeble, unable to handle her own affairs, and even unaware of her own actions at a time prior to executing a will is insufficient to show that the testatrix lacked testamentary capacity. Sessions v. Handley, 470 So.2d 1164 (Ala. 1985). A testatrix may be found mentally competent to execute a will, despite evidence that she was diagnosed as dementia praecox, if there is sufficient evidence from competent witnesses who transacted business with or assisted her in financial affairs. Lawrence v. First National Bank of Tuskaloosa, 516 So.2d 630 (Ala. 1987). The question of whether there was testamentary capacity is determined by the testatrix's mental condition at the time she executed the will. Burke v. Thomas, 282 Ala. 412, 211 So.2d 903 (1968). Testamentary capacity is defined as follows:
" ' "[M]ind and memory sufficient to recall and remember the property she was about to bequeath, and the objects of her bounty, and the disposition which she wished to make-to know and understand the nature and consequences of the business to be performed, and to discern the simple and obvious relation of its elements to each other...." '
" Sessions v. Handley, 470 So.2d at 1167, quoting Fletcher v. Deloach, 360 So.2d 316 (Ala. 1978).
"In its order reversing the probate court's judgment, the circuit court found that the probate court had failed to give due regard to [the testimony of the attorney that drafted the will] and noted that [the attorney] had had far greater opportunity to scrutinize [the testatrix's] mental state. After thoroughly examining the record, we must agree with the circuit court. The testimony of [one of the will contestants], the neighbor, and [the diagnosing doctor] merely establishes that [the testatrix] was in mental decline; it does not prove that she was in dementia at the time she planned and executed her will. [The attorney] and his secretary were the only witnesses who actually observed [the testatrix] during this period; thus, their testimony must be afforded greater weight. Accordingly, we find no error in the circuit court's order granting a new trial in this matter."
611 So.2d at 338-39.
During the presentation of their case, Stephens and Dees's estate elicited testimony from various friends, neighbors, and acquaintances of Dees who testified that she was alert and mentally competent while living under Stephens's care and during the period in which she executed the September 2012 will. Accordingly, *715 there was a disputed factual issue with regard to Dees's competency, and the trial court committed no error when it denied Colley's motion for a judgment as a matter of law at the close of all the evidence.[2]
III.
Colley's second argument is that the trial court erred by entering a judgment as a matter of law in favor of Stephens and Dees's estate on his fraud claims. He further argues that the trial court exceeded its discretion inasmuch as it prevented him from introducing evidence of Stephens's history of bad acts, which, Colley alleges, would have helped him establish a prima facie case of fraud. However, Colley has failed to include in his brief any discussion of the actual elements of a fraud claim or any citations to authority that would support his broad arguments. " 'Where an appellant fails to cite any authority for an argument, this Court may affirm the judgment on those issues, for it is neither the Court's duty nor its function to perform all the legal research for an appellant.' " Welch v. Hill, 608 So.2d 727, 728 (Ala. 1992) (quoting Sea Calm Shipping Co., S.A. v. Cooks, 565 So.2d 212, 216 (Ala. 1990) ). Accordingly, Colley is entitled to no relief on the basis of this argument.
IV.
Colley next argues that the judgment against him should be reversed based on the trial court's decision to bifurcate the case so that the validity of the September 2012 will was determined in the initial trial, and his claims relating to the power of attorney and Dees's financial accounts were left for a subsequent trial. Colley argues that his case was "gutted" just prior to trial when the trial court informed him of its decision to bifurcate and that he should accordingly be granted a new trial based on "accident or surprise, which ordinary prudence could not have guarded against." § 12-13-11(a)(3), Ala. Code 1975.[3]
Initially, we note that the record reveals that the trial court explained at various points dating back to at least June 2016 that it would be conducting a bifurcated trial, and Colley's claim that he was taken by surprise by the trial court's decision on the eve of trial is greatly exaggerated. Any questions regarding what claims would be included in the "will contest" that would be tried first were answered in the trial court's February 2017 order when it stated: "A will contest is limited to the issue of whether the writing in question is a valid will of the decedent." In light of the trial court's repeated statements in this regard, the onus was upon Colley to seek clarification at some time before the trial was to begin if he still had questions regarding the bifurcation.
We further note that Colley has failed to cite any authority in support of his argument *716 that would demonstrate that the trial court exceeded its discretion in how it scheduled and managed the trial of Colley's claims. See generally EB Invs., L.L.C. v. Pavilion Dev., L.L.C., 77 So.3d 133, 136-37 (Ala. 2011) (explaining that trial courts have wide discretion under Rule 42(b), Ala. R. Civ. P., in ordering separate trials and severing claims). Accordingly, Colley is not entitled to a new trial on the basis of this argument.
V.
Colley's fourth argument is that the trial court erred by granting Stephens's motion in limine and excluding all evidence relating to Stephens's manslaughter conviction and by subsequently barring Colley from introducing other evidence of Stephens's reputation and alleged history of bad acts. Colley argues that the evidence he sought to introduce in this regard established that Dees could have been afraid of Stephens; he also argues that the evidence of Stephens's alleged history of deceit would have had probative value with regard to his fraud claims. Stephens and Dees's estate argue that the trial court's evidentiary decisions were all proper and within its broad discretion. We agree.
" ' "[T]he trial court has great discretion in determining whether evidence ... is relevant and whether it should be admitted or excluded." Sweeney v. Purvis, 665 So.2d 926, 930 (Ala. 1995). When evidentiary rulings of the trial court are reviewed on appeal, "rulings on the admissibility of evidence are within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of that discretion." Bama's Best Party Sales, Inc. v. Tupperware, U.S., Inc., 723 So.2d 29, 32 (Ala. 1998), citing Preferred Risk Mut. Ins. Co. v. Ryan, 589 So.2d 165 (Ala. 1991).'
" Bowers v. Wal-Mart Stores, Inc., 827 So.2d 63, 71 (Ala. 2001)."
Van Voorst v. Federal Express Corp., 16 So.3d 86, 92 (Ala. 2008). At a pretrial hearing, the trial court explained that it would allow Colley to introduce evidence explaining that Stephens was "not qualified" to serve as the executor of Dees's estate, but it would not allow Colley to explain that the lack of qualification was the result of a manslaughter conviction, because, it reasoned, evidence of that conviction would be prejudicial and the prejudicial effect would substantially outweigh any probative value. In its written order granting the motion in limine, the trial court further referenced the fact that more than 10 years had passed since the later of the conviction or Stephens's release from confinement, an apparent reference to Rule 609(b), Ala. R. Evid., which provides that evidence of a conviction in the nature of Stephens's conviction for manslaughter
"is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."
During the course of trial, Colley attempted to elicit other evidence of Stephens's alleged bad acts and reputation for violence, and the trial court prevented him from doing so each time, explaining on one such occasion that Stephens's reputation for "peacefulness is [of] no relevance; truthfulness would be" and another time that "I just don't think it's relevant." Thus, the trial court explained that it was excluding evidence of Stephens's alleged violent reputation and past acts because it did not *717 deem them relevant in the will contest being tried; nevertheless, the trial court also explained that Stephens's reputation for truthfulness was relevant, and it allowed Colley to question witnesses on that topic, even over the objection of Stephens and Dees's estate.
Considering the full record, we cannot conclude that the trial court exceeded its discretion in making any of those evidentiary determinations. The Alabama Rules of Evidence empower a trial court to exclude evidence it deems to be irrelevant as well as evidence that, although possibly relevant, is deemed to be sufficiently prejudicial that the risk of that prejudice outweighs any probative value. See Rule 402, Ala. R. Evid. ("Evidence which is not relevant is not admissible."), and Rule 403, Ala. R. Evid. ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ...."). The trial court fully explained its decisions to exclude the evidence in question, and its decisions in that regard have a reasonable basis and are consistent with the Alabama Rules of Evidence and our caselaw. See, e.g., McMahon v. Yamaha Motor Corp., U.S.A., 95 So.3d 769, 775 (Ala. 2012) ("We agree that the trial court had a reasonable basis under Rule 403 upon which to exclude the evidence the [appellants] argue should not have been excluded; accordingly, we hold that the trial court did not exceed its discretion by excluding [that] evidence ...."). We further note that Colley has cited no caselaw that addresses a trial court's discretion with regard to the admission of evidence or that would indicate that the trial court exceeded its discretion in any respect. Colley is not entitled to a new trial on the basis of the trial court's decisions excluding evidence he wanted to introduce.
VI.
Colley's penultimate argument is that he is entitled to a new trial because, he alleges, the jury was evidently confused by the jury instructions inasmuch as it questioned the trial court regarding what the law was almost immediately after beginning its deliberations. In support of this argument, he cites Mobile Gas Service Corp. v. Robinson, 20 So.3d 770, 781 (Ala. 2009), and McGregory v. Lloyd Wood Construction Co., 736 So.2d 571, 579 (Ala. 1999), for the proposition that a party is entitled to have the jury correctly instructed on the law, provided the instruction is relevant to the case and is not confusing or misleading. Colley does not identify any specific jury instructions that were given-or any requested jury instructions that were not given-that were the likely source of the jury's alleged confusion; rather, he simply alleges that "[i]t is blatantly obvious that the jurors did not understand nor comprehend the instructions given them nor the standard by which they were supposed to be deliberating in this case." Colley's brief, p. 29.
Although it is apparent that there was at least some initial confusion on the jury's part, inasmuch as it sought additional guidance from the trial court shortly after beginning deliberations, Colley has not established that this initial confusion entitles him to a new trial. During a conference with counsel held after receiving the jury's request for further guidance, counsel for Colley requested that the trial court identify for the jury the two main issues it needed to address-Dees's mental capacity and whether Stephens exercised undue influence over her-while counsel for Stephens and Dees's estate argued that there was no need to give any more instructions and that the jury should simply return to its deliberations. The trial court ultimately agreed with counsel for Colley and directed the jury as follows:
"I have told you I've given you the instructions as to the applicable law and *718 you have the evidence. Just to help clear things up, you know, I will tell you that the issues, based upon the instructions, or a summary of them, and then the actual instructions I've given you are the guidelines or the law you are to apply to this case. But it does involve the issue of whether or not it's a valid will, whether or not Ms. Dees had mental capacity, and whether or not there was undue influence by Leroy Stephens. But the guidelines you're to use are the instructions that I have previously given you."
No party objected to this additional instruction.
Thus, after the jury informed the trial court of its initial confusion, the trial court gave the jury additional instruction consistent with the request of Colley's counsel, and no objection to that instruction or similar manifestation of disagreement such as a motion for a mistrial was made by any party. In light of these facts, we are not inclined to hold that the trial court committed any error with regard to jury instructions, much less error meriting the reversal of the judgment entered on the jury's verdict. See also Campbell v. State, 654 So.2d 69, 72 (Ala. Crim. App. 1994) (citing Phillips v. State, 527 So.2d 154 (Ala. 1988) ("[T]he appellant cannot request a jury instruction and then contend that the instruction was in error. The error in such a case is invited error.") ).
VII.
Colley's final argument is that he was prejudiced by the trial court's demeanor toward his counsel during the course of the trial. In support of this argument, Colley refers to the motion seeking the trial judge's recusal he made before trial, presumably in an attempt to support his implied argument that the trial court generally treated him and his counsel unfairly throughout this litigation so as to effectively make the trial and the resulting verdict fundamentally unfair. We note initially that Colley has put forth no standard by which this Court should evaluate his argument, and he has cited no caselaw or authority that would support it. He is accordingly entitled to no relief on that basis alone. Welch, 608 So.2d at 728. Nevertheless, because of the nature of Colley's charge, we will address the most specific allegation he makes-that the trial court "scolded" his counsel and threatened to hold her in contempt in a loud voice the jury "obviously" heard, thus diminishing his counsel in front of the jury and prejudicing his case.
The record indicates that, on direct examination, Colley's counsel asked Colley about Stephens's reputation for truthfulness. After Colley testified that Stephens had a reputation for being untruthful, Colley's counsel asked him about Stephens's "general reputation for peacefulness." Counsel for Stephens and Dees's estate objected, and a bench conference was held in which the trial court reiterated its previous position that Stephens's reputation for peacefulness was not relevant. Colley's counsel thereafter withdrew the question and passed the witness for cross-examination. The following exchange then occurred:
"Stephens's counsel: And here your aunt was that you cared so much about, that you were so concerned about, that you let live with a man that you thought was untruthful, had a reputation for being untruthful, and you didn't do one thing, correct?
"Colley's counsel: Objection, your honor.
"Court: What's your objection?
"Colley's counsel: Well, the truth-
"Stephens's counsel: She doesn't like the answer-
"Colley's counsel: The truth-no. The truthfulness is not the issue. The peacefulness is the issue here, and we're not allowed to go down that *719 road, and so that would be the reason why I did not go there. But we can't explore our road, but he's going to get to go down his road.
"Court: Ma'am, you're the one that asked the question about truthfulness, and he has a right to respond to it. And let me-come here. Come here.
"Reporter's note: (Whereupon, a bench conference was held, to which the following occurred out of the hearing of the trial jury:)
"Court: If you make one more-
"Reporter: I can't hear.
"Court:-in front of that jury out loud, you will be held in contempt and fined. Do you understand that? Do you understand?
"Colley's counsel: I do.
"Reporter's note: (Whereupon, the following proceedings were held in open court ....)"
Thus, the record indicates that, after the trial court had repeatedly instructed the parties that it was not going to allow evidence of Stephens's alleged violent reputation, counsel for Colley nevertheless stated in front of the jury that "peacefulness is the issue here." The trial court responded by calling counsel up for a bench conference at which it threatened Colley's counsel with contempt if she raised that issue in front of the jury again. Colley alleges that this scolding was done in a voice the jury obviously heard; however, that allegation is belied by the fact that the court reporter indicated that she could not hear the trial judge in order to record his statements. Moreover, the court reporter affirmatively noted in her record that the exchange "occurred out of the hearing of the trial jury." It thus appears that Colley's concern that the jury heard the exchange and subsequently thought less of his counsel is unfounded, and his argument is without merit.[4]
VIII.
On appeal, Colley challenges the judgment entered against him in his action contesting the September 2012 will executed by Dees, his aunt, leaving the vast majority of her estate to Stephens. However, Colley has failed to identify any errors committed by the trial court that would merit reversing the judgment entered on the jury's verdict and either entering a judgment in his favor or ordering a new trial. The judgment entered by the trial court is accordingly affirmed.
AFFIRMED.
Bolin, Wise, and Sellers, JJ., concur.
Shaw, J., concurs in the result.

At a June 2016 hearing on Colley's motion to recuse, the trial judge had explained that he would first hold a trial on the will contest before considering other claims related to the propriety of how Stephens became a signatory or beneficiary on Dees's various financial accounts. At one point during that hearing, the trial judge explicitly stated: "I'm not even concerned about the [certificates of deposit] in the will contest, because we've decided that's a trial for a separate day because we're going to address the will contest first."

Colley argues broadly that a judgment as a matter of law in his favor also should have been entered on his undue-influence claim; however, his specific argument discusses only the evidence of Dees's competency and does not address the elements of an undue-influence claim. See, e.g., McGimsey v. Gray, 260 So. 3d 25 (Ala. 2018) (discussing elements of an undue-influence claim in a will contest). Any argument regarding Colley's undue-influence claim, accordingly, has been waived. See Tucker v. Cullman-Jefferson Ctys. Gas Dist., 864 So.2d 317, 319 (Ala. 2003) ("[N]o matter will be considered on appeal unless presented and argued in brief.").

The applicability of § 12-13-11 is limited to, at most, probate court proceedings. See Code Commissioner's Notes following § 12-13-11, Ala. Code 1975 ("This section is superseded by the Alabama Rules of Civil Procedure as to civil proceedings, but has been retained for possible applicability in probate proceedings.").

We further note that even the trial court's threatening Colley's counsel with contempt in front of the jury, had that occurred, would not require a finding of reversible error. In a similar case in which counsel persisted in raising an issue after multiple sustained objections and after the trial court stated that that issue was not relevant, no prejudice was found, notwithstanding the trial court's subsequent statement to counsel in open court that " 'I am telling you now to shut up about this marijuana business or I will put you in contempt.' " See Sanders v. State, 426 So.2d 497, 506 (Ala. Crim. App. 1982).