REL: 08/15/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

_____

### 1130609

_____

Franklin Leroy Stephens

v.

Hazel Colley

Appeal from Pike Circuit Court
(CV-13-900180)

STUART, Justice.

Franklin Leroy Stephens, the defendant below, appeals from an order of the Pike Circuit Court granting injunctive relief to the plaintiff below, Hazel Colley. We reverse and remand.

1130609

I.

In late 2011, Sara Frances Dees was residing at Troy Health and Rehabilitation Center following the amputation of her second leg as a result of diabetes and related circulation issues. On approximately January 15, 2012, Stephens -- a nephew of both Dees and Colley -- checked Dees out of the rehabilitation center and moved her back into her house in Troy. Stephens and an unidentified female companion also moved into the house and began caring for Dees. Colley alleges that Stephens thereafter began restricting access to Dees, preventing Colley and Dees's friends from speaking with her on the telephone or visiting with her outside his or his female companion's presence. Colley, who lives in Opelika, alleges that she had previously had a close relationship with her sister and had stayed with her for weeks at a time to help with her medical needs; however, she alleges, once Stephens moved into Dees's house Stephens would no longer allow her to stay with Dees overnight.

Over the course of 2012, Stephens's role in Dees's life continued to increase. In September 2012, Stephens scheduled two separate appointments for Dees with an attorney. At the

first of those appointments on September 26, 2012, Dees executed a durable power of attorney designating Stephens as Dees's attorney-in-fact. At a second appointment on September 28, 2012, Dees executed a new will naming Stephens as executor and primary heir of her estate. These newly executed documents replaced a previous durable power of attorney naming Colley as Dees's attorney-in-fact and a will naming Colley as executor and primary heir of Dees's estate, both of which Dees had executed in July 2011.[1]

Beginning in October 2012, Stephens also began taking Dees to the various financial institutions at which she had deposits and requesting that he either be added to all her accounts as a signatory or be named as the beneficiary on the accounts. The evidence in the record indicates that multiple bank employees involved in those requests were alarmed by Stephens's actions. For example, Kathryn Faircloth, a personal banker at Troy Bank and Trust, made the following statement in an affidavit submitted to the trial court:

---

[1]Dees had also executed a document naming Colley as her health-care proxy in July 2011. There is no evidence indicating that this document was subsequently revoked or superseded by a later document.

"Mrs. Sara Dees has banked with Troy Bank and Trust for many years. In working with her on her banking needs, I met her sister, Hazel Colley, and have spoken with each of them often regarding Mrs. Dees checking accounts as well as several certificates of deposit. Mrs. Dees executed a power of attorney which named Mrs. Colley as her attorney-in-fact and supplied a copy of that to the bank. Mrs. Dees listed Hazel Colley as joint owner on her personal checking account and also as a pay-on-death beneficiary on certain certificates of deposit. Even when Mrs. Dees married Marion Dees, Hazel Colley remained on her checking account and some certificates of deposit as pay-on-death.[2] Marion was on the checking account for a period of time and then came off but Hazel remained on the checking account.

"Mrs. Dees was brought to the bank by Leroy Stephens in 2012, who stated that he was to be added as beneficiary of every financial instrument held by Mrs. Dees at [Troy Bank and Trust]. This included all of her certificates of deposit and her checking account. Mrs. Dees's appearance was drastically different from how she appeared in our interactions through the years. She did not appear alert or fully aware of the changes stated by Stephens. This was very out of character for Mrs. Dees because she always listed her sister Mrs. Colley as beneficiary on all of her certificates of deposit, even when she was married to Marion Dees. Mr. Stephens was so adamant to make these changes to Mrs. Dees's accounts that he called me regularly wanting to know when the paperwork on all certificates of deposit

_____

[2]The record indicates that Marion Dees died shortly after Sara Dees, but it is otherwise silent regarding him and his relationship with Dees. It is not clear whether he lived with Sara Dees and Stephens throughout 2012 or whether he lived somewhere else. However, it appears that he was not involved in her life during this time, whether for health, personal, or other reasons.

and bank accounts would be completed and ready for Mrs. Dees's signature.

"I grew concerned while making these changes because I noticed several large checks clearing out of her checking account. Each of the large checks were made payable to Leroy Stephens, most of them with the memo listed as 'bills.' Checks were also clearing her account for her bills in addition to these large checks made payable to Mr. Stephens. I immediately notified my supervisor of the large checks clearing her account that were abnormal from her typical usage. My supervisor then consulted the bank's security officer, who advised that absent any order from a judge that declared Mrs. Dees not competent, we could not refuse to add Stephens to her accounts or cash checks she signed made payable to Mr. Stephens."

It appears that Stephens was thereafter successfully added as a signatory or beneficiary to all of Dees's accounts.

On February 16, 2013, Dees passed away. Thereafter, Stephens began exercising control of those accounts on which he had been listed as the payable-on-death beneficiary. The value of those accounts appears to have exceeded $300,000 at that time. On February 22, 2013, Stephens submitted Dees's will to the Pike Probate Court and petitioned the probate court to name him executor of Dees's estate consistent with the terms of that will; on March 1, 2013, the probate court granted that petition. On March 8, 2013, Colley separately moved both the probate court and the Pike Circuit Court to

1130609

have the administration of Dees's estate removed to the circuit court. Colley simultaneously moved the circuit court to remove Stephens as the executor of Dees's estate pursuant to § 43-2-22(a), Ala. Code 1975, because Stephens had been convicted in 1990 of manslaughter.[3] On April 17, 2013, the circuit court granted Colley's motion and ordered the administration of Dees's estate removed to the circuit court. Following a hearing on April 24, 2013, the circuit court also granted Colley's motion to remove Stephens as executor of Dees's estate. Pursuant to the terms of Dees's will, Stephens's daughter, Sonya S. Bolling, was eventually named as successor executrix of Dees's estate.

On August 26, 2013, Colley filed an amended complaint seeking to set aside the power of attorney and will executed by Dees in 2012, alleging that Dees was incompetent at the time those documents were executed and that Stephens had

---

[3]Section 43-2-22(a) provides, in pertinent part:

"No person must be deemed a fit person to serve as executor who is under the age of 19 years, or who has been convicted of an infamous crime, or who, from intemperance, improvidence or want of understanding, is incompetent to discharge the duties of the trust."

6

procured them via fraud, misrepresentation, and undue influence.[4] On October 30, 2013, Colley initiated a new action asserting multiple undue-influence and breach-of-fiduciary-duty claims against Stephens. Colley simultaneously moved the circuit court to exhume Dees's remains and to consolidate this new action with the already existing action; the circuit court granted the motion to consolidate the next day.

Colley thereafter continued the discovery process, taking depositions and subpoenaing Dees's financial records. On February 19, 2014, after obtaining and reviewing those records, Colley moved the circuit court to enter a temporary restraining order barring Stephens from spending any further money that he had obtained from Dees's accounts or taking any action that would affect the title to Dees's house, in which Stephens continued to live after Dees's death. Colley also requested that Stephens be ordered to divulge where all assets formerly held by Dees were located and that Troy Bank and Trust and Wells Fargo be ordered to pay all funds in Dees's

---

[4]Colley's March 2013 motion to remove Dees's estate to the circuit court appears to have been treated as a complaint initiating an action even though it did not formally assert any cause of action.

accounts, which were then held in Stephens's name, an amount totaling approximately $72,000, into the circuit court. Colley simultaneously moved the circuit court to enter a preliminary injunction extending the terms of the temporary restraining order until this litigation was resolved. The circuit court issued the requested temporary restraining order that same day and set a hearing on the motion for a preliminary injunction for February 24, 2014.

Following the February 24 hearing, which consisted entirely of arguments by counsel, Colley, on February 26, submitted a supplemental motion for injunctive relief to the circuit court, along with various affidavits and other documentary evidence. On February 27, 2014, the circuit court entered an order granting Colley the injunctive relief she had sought, stating:

> "Having considered [Colley's] motion for injunctive relief, this court finds said motion well taken. Accordingly, it is ordered that all funds not previously frozen or transferred in accordance with the temporary restraining order issued on February 19, 2014, from Troy Bank and Trust in Troy, Alabama, Wells Fargo Advisors in Troy, Alabama, and Trustmark National Bank in Brewton, Alabama,[5] in

_____

[5]Colley's initial application for injunctive relief filed on February 19, 2014, identified only financial accounts held by Stephens at Troy Bank and Trust and Wells Fargo. At the

8

the name of Leroy Stephens be immediately paid to the Circuit Clerk of Pike County, Alabama, who is ordered to hold said funds until a final judgment is entered in the above styled case.

"It is further ordered that neither the Estate of Sara Dees nor Leroy Stephens shall transfer title, rent, lease, or dispense of the real property located at ... Avenue, Troy, Alabama, and that the aforementioned property shall remain in the name of Sara Dees, pending a final judgment in this matter.

"Defendant Franklin Leroy Stephens is barred from transferring, selling, or dispensing of any property received from Dees during her lifetime, and is further ordered to provide a complete accounting of assets obtained through the estate of Sara Frances Dees at the time of her death, including but not limited to: the 2010 Pontiac vehicle transferred to [Stephens] prior to Dees's death, all furnishings of Dees's home, all jewelry owned by Dees, and personal items of value.

"A copy of this order shall be provided to all counsel of record and to the below listed banks."

On March 7, 2014, Stephens filed a notice of appeal to this Court challenging the preliminary injunction entered by the circuit court.[6]

---

February 24, 2014, hearing, Colley advised the trial court of another account maintained by Stephens at Trustmark National Bank.

[6]Also on March 7, 2014, the trial court modified the terms of the February 27 preliminary injunction to make it subject to Colley's posting a $2,500 security bond.

## II.

"When this Court reviews the grant or denial of a preliminary injunction, '"[w]e review the ... [c]ourt's legal rulings de novo and its ultimate decision to issue the preliminary injunction for [an excess] of discretion."' Holiday Isle, LLC v. Adkins, 12 So. 3d 1173, 1176 (Ala. 2008) (quoting Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 428, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006))."

Monte Sano Research Corp. v. Kratos Defense & Sec. Solutions, Inc., 99 So. 3d 855, 861-62 (Ala. 2012).

## III.

When reviewing a preliminary injunction, this Court must consider both whether the evidence in the record supports the issuance of the preliminary injunction and whether the form of the preliminary-injunction order itself complies with the requirements of Rule 65(d)(2), Ala. R. Civ. P. We review the evidence to determine whether the following elements set forth in Perley ex rel. Tapscan, Inc. v. Tapscan, Inc., 646 So. 2d 585, 587 (Ala. 1994), were established:

"In order for a trial court to grant a preliminary injunction, the plaintiff must show all of the following: 1) that without the injunction the plaintiff would suffer immediate and irreparable injury; (2) that the plaintiff has no adequate remedy at law; (3) that the plaintiff has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship

1130609

imposed on the defendant by the injunction would not unreasonably outweigh the benefit accruing to the plaintiff."

(Citing Martin v. First Fed. Sav. & Loan Ass'n of Andalusia, 559 So. 2d 1075 (Ala. 1990); Board of Dental Exam'rs of Alabama v. Franks, 507 So. 2d 517 (Ala. Civ. App. 1986), writ quashed, 507 So. 2d 521 (Ala. 1987)). Rule 65(d)(2) meanwhile sets forth the elements that every preliminary-injunction order must contain:

"Every order granting an injunction shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

On appeal, Stephens argues both that Colley failed to establish by competent evidence the four elements set forth in Perley and that the circuit court's preliminary-injunction order does not comply with Rule 65(d)(2). In this case, it is clear on its face that the circuit court's order does not comply with Rule 65(d)(2). Accordingly, we need not consider whether the evidence ultimately supports the issuance of the preliminary injunction because the order is due to be reversed

11

regardless of whether the evidence supports the issuance of the injunction. See Marathon Constr. & Demolition, LLC v. King Metal Recycling & Processing Corp., 129 So. 3d 272, 276 n. 3 (Ala. 2013) ("The defendants make other complaints about the trial court's November 28, 2012, order .... Because the trial court's failure to comply with the requirements of Rule 65 is dispositive, we need not reach the other arguments.").

"Pursuant to Rule 65, it is mandatory that a preliminary-injunction order give reasons for the issuance of the injunction, that it be specific in its terms, and that it describe in reasonable detail the act or acts sought to be restrained." Monte Sano Research Corp., 99 So. 3d at 863. The February 27, 2014, order in this case is sufficiently specific in its terms and describes in reasonable detail the acts sought to be restrained; however, it contains no explanation of the reasons for its issuance. Instead, the order opens by stating that the court has "considered [Colley's] motion for injunctive relief [and] finds said motion well taken." Then the order immediately proceeds to detail the specific acts that it requires or prohibits. What

is missing from the order is any discussion of the reasons Colley's motion for injunctive relief was "well taken."

In her brief to this Court, Colley acknowledges this flaw in the order but argues that the preliminary injunction is nevertheless due to be upheld:

> "While the order does not specifically state the reasons for granting the injunction, the order does state that 'having considered plaintiff's motion for injunctive relief, this court finds said motion well taken,' a clear sign that the trial court has considered all evidence and is granting [Colley's] motion for the reasons stated and evidence provided in [her] motion for injunctive relief and supplemental motion for injunctive relief, and the arguments raised at the motion for injunctive relief hearing."

Colley's brief, at p. 23. However, accepting this argument would require us to ignore the clear language of Rule 65(d)(2), and we are not inclined to do so. "This Court has repeatedly held that the language of Rule 65(d)(2) is <u>mandatory</u> and requires that an order issuing a preliminary injunction state reasons for issuing the injunction and that it be specific in its terms." <u>Butler v. Roome</u>, 907 So. 2d 432, 434 (Ala. 2005). Moreover, we have repeatedly reaffirmed the mandatory nature of Rule 65(d)(2) in every case in which we have considered the issue. See, e.g., <u>Marathon Constr. &</u>

13

1130609

Demolition, 129 So. 3d at 279 (concluding that the trial court "exceeded the scope of its discretion in issuing the ... preliminary injunction because it did not comply with the requirements set forth in Rule 65"); Monte Sano Research Corp., 99 So. 3d at 863 ("[A]n examination of the trial court's order reveals that it violated Rule 65(d)(2), Ala. R. Civ. P., by failing to provide the reasons for the issuance of the injunction ...."); Walden v. ES Capital, LLC, 89 So. 3d 90, 111 (Ala. 2011) ("Because the reasons for the issuance of the injunction were clearly indicated on the face of the order and because those reasons were, as demonstrated by the present case, well founded, we reject [the appellant's] contentions that the trial court's order fails to satisfy the mandatory requirements of Rule 65(d)(2)."); and Hall v. Reynolds, 27 So. 3d 479, 481 (Ala. 2009) ("Although the trial court may have intended to grant injunctive relief by simply entering a judgment in favor of the [appellees], it did not do so, and it followed none of the mandatory requirements of Rule 65(d)(2), Ala. R. Civ. P."). In sum, the circuit court's failure to include in the preliminary-injunction order the reasons for granting Colley's motion for injunctive relief requires the

14

reversal of that order regardless of the fact that the circuit court presumably had its reasons for granting the order, though those reasons were not articulated in the order.

IV.

Following the entry of a preliminary injunction against him by the circuit court, Stephens appealed to this Court, arguing that the order entering the preliminary injunction was invalid because, he said, it failed to comply with Rule 65(d)(2) and was due to be reversed because, he alleged, it was not supported by competent evidence. Because the circuit court failed to state its reasons for entering the preliminary injunction in the order doing so, the order must be reversed for noncompliance with Rule 65(d)(2). This noncompliance obviates the need to consider Stephens's other argument that there was insufficient evidence before the circuit court to merit the entry of a preliminary injunction. We further note, however, that our holding in this regard should not be construed as precluding Colley from requesting that the circuit court again issue a preliminary injunction should she still deem such an injunction advisable. Any such injunction that might be entered, however, is subject to further review

1130609

to determine its compliance with Rule 65(d)(2), as well as to determine whether competent evidence exists to conclude that the elements set forth in <u>Perley</u> were established.[7]

REVERSED AND REMANDED.

Moore, C.J., and Parker and Wise, JJ., concur.

Shaw, J., concurs in the result.

---

[7]In other words, this case is distinguishable from <u>Bankruptcy Authorities, Inc. v. State</u>, 620 So. 2d 626 (Ala. 1992), in which this Court, after reversing an order entering a preliminary injunction for failure to comply with Rule 65(d)(2), declined to consider in a subsequent appeal whether there was sufficient evidentiary support for a newly entered and Rule 65(d)(2)-compliant preliminary injunction because the appellant had not asserted a sufficiency-of-the-evidence argument in its initial appeal decided on Rule 65(d)(2) grounds.

1130609

SHAW, Justice (concurring in the result).

The preliminary-injunction order in this case does not explicitly state the reasons for its issuance; instead, it can be read to incorporate, by reference, the reasons provided in Hazel Colley's motion for injunctive relief.

Rule 65(d)(2), Ala. R. Civ. P., states that an "order granting an injunction shall set forth the reasons for its issuance ...."  I am concerned that this language does not necessarily preclude incorporating those reasons from another document.  Specifically, I note that Rule 65(d)(2) only explicitly forbids incorporation by reference of a <u>description of the acts to be restrained</u>: "[the order] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained ...." On the other hand, the rule states that the "reasons for its issuance" are to be "set forth," but this requirement does not include a prohibition on referring to another document.

Because there is an explicit prohibition on referring to other documents as to one component of the order (the act sought to be restrained), but not another (the reasons for its issuance), one could reasonably conclude that reference to

17

another document might be acceptable for the latter.[8] Such a distinction is reasonable: the party restrained by the injunction needs to know precisely what acts are or are not permitted; thus, the issuing court should independently state the restrictions to ensure that they are clear.[9] However, a party does not, necessarily, need the issuing court to independently describe the reasons for the injunction. An appellate court is more than able to review in the record any documents referred to that might provide the issuing court's reasons. Under this analysis, the trial court's order in the instant case is sufficient to comply with Rule 65(d)(2).

The caselaw, however, is not on my side. See, e.g., Monte Sano Research Corp. v. Kratos Defense & Sec. Solutions, Inc., 99 So. 3d 855, 863 (Ala. 2012) ("[A]n examination of the trial court's order reveals that it violated Rule 65(d)(2), Ala. R. Civ. P., by failing to provide the reasons for the issuance of the injunction ...."); Butler v. Roome, 907 So. 2d

---

[8]Because Rule 65 is a rule of this Court, I do not believe that separation-of-powers concerns require us to apply the plain-language rule of statutory construction.

[9]See also Rule 65(d)(1), which provides that the acts to be restrained by a restraining order shall be "describe[d] in reasonable detail, and not by reference to the complaint or other document ...."

1130609

432, 435 (Ala. 2005) ("[T]he trial court's order in this case does not contain the reasons for its issuance ...."); and Teleprompter of Mobile, Inc. v. Bayou Cable TV, 428 So. 2d 17, 20 (Ala. 1983) ("It is apparent the order does not comply with Rule 65(d)(2). There are no reasons given for the issuance of the preliminary injunction ...."). [10] These precedents are not challenged on appeal; therefore, stare decisis advises me to follow them. Moore v. Prudential Residential Servs. Ltd. P'ship, 849 So. 2d 914, 926 (Ala. 2002) ("Stare decisis commands, at a minimum, a degree of respect from this Court that makes it disinclined to overrule controlling precedent when it is not invited to do so."), and Clay Kilgore Constr., Inc. v. Buchalter/Grant, L.L.C., 949 So. 2d 893, 898 (Ala. 2006) (noting the absence of a specific request by the appellant to overrule existing authority and stating that, "[e]ven if we would be amenable to such a request, we are not

---

[10]As to this point, the decision in Marathon Construction & Demolition, LLC v. King Metal Recycling & Processing Corp., 129 So. 3d 272 (Ala. 2013), cited in the main opinion, was joined by only four Justices: As to "that part of the discussion that addresses the lack of compliance with Rule 65(d)(2), Ala. R. Civ. P.," I expressed no opinion. 129 So. 3d at 280 (Shaw, J., concurring in part and concurring in the result). My concerns in Marathon were those I express now.

19

1130609

inclined to abandon precedent without a specific invitation to do so").  I therefore concur in the result.